# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KRISTEN PETRIL | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | |
| CHEYNEY UNIVERSITY OF PENNSYLVANIA | : | NO. 10-6777 |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.** April 29, 2011

## I. Introduction

Plaintiff Kristen Petril ("Plaintiff") brings suit against her employer, Cheyney University of Pennsylvania ("Defendant"), for "hostile environment" sexual harassment and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) et seq. (hereinafter "Title VII"). Defendant now moves to dismiss Plaintiff's First Amended Complaint for failure to state a claim. For the following reasons, Defendant's Motion will be denied.

## II. Factual and Procedural History

Since January 1, 2004, Plaintiff has been employed by Defendant as a campus police officer. Am. Compl. ¶¶ 9-10. Beginning in April 2008, Plaintiff's co-worker, police officer Franco Robinson ("Robinson"), began making unwanted sexual advances, including asking Plaintiff to go out with him and calling Plaintiff "sexy." Am. Compl. ¶¶ 11-13. On June 15, 2008, Robinson approached Plaintiff when she was alone in the locker room, rubbed Plaintiff's shoulders, and asked Plaintiff to "[l]et me hit it." Am. Compl. ¶ 14. When Plaintiff refused, Robinson said, "Come on, let me fuck you real quick. No one will know, all the cameras are

1

down." Am. Compl. ¶ 14. Plaintiff refused and escaped when another female officer entered the locker room. Am. Compl. ¶ 15.

Plaintiff immediately reported the incident to Sergeant DeVore ("DeVore"), who responded that he "would take care of it." Am. Compl. ¶ 15. DeVore and Robinson are longtime acquaintances. Am. Compl. ¶ 15. Later that day, Robinson followed Plaintiff to the gas station and chased her car as she drove away. Am. Compl. ¶¶ 16-17. On June 17, 2008, Plaintiff complained to DeVore a second time about Robinson's sexual harassment and told DeVore she was afraid to return to work. Am. Compl. ¶ 18. DeVore did not prepare a written report of Plaintiff's allegations, and Defendant did not investigate her complaint. Am. Compl. ¶¶ 19-20.

On June 25, 2008, Plaintiff asked Interim Chief Laurence Lester ("Lester") for an update on her sexual harassment complaint. Am. Compl. ¶ 21. Lester later violated Defendant's sexual harassment reporting policy by e-mailing information regarding Plaintiff's complaint to uninterested parties. Am. Compl. ¶ 21. On June 30, 2008, Plaintiff became extremely frightened and was hospitalized for a nervous breakdown. Am. Compl. ¶ 22. On July 5, 2008, Defendant placed Plaintiff on paid administrative leave to investigate her complaint of sexual harassment. Am. Compl. ¶ 23. During her leave, Plaintiff was treated for severe emotional distress and was medicated. Am. Compl. ¶ 24.

On August 28, 2008, Defendant's Human Resources Representative, Vicky Strong ("Strong"), told Plaintiff that she could not remain on paid administrative leave and was to return to work immediately. Am. Compl. ¶ 26. Plaintiff told Strong she could not return to work until Defendant took action on her sexual harassment complaint. Am. Compl. ¶ 26. Later that day, DeVore, who had been promoted to Police Chief, called Plaintiff and demanded that she return to

work. Am. Compl. ¶¶ 25, 27. Plaintiff reported to work and was subjected to continued harassment by Robinson, including receiving inappropriate text messages, until Defendant later terminated Robinson's employment. Am. Compl. ¶ 28. Defendant deducted from Plaintiff's paychecks the sum she was paid while on administrative leave. Am. Compl. ¶ 29.

Plaintiff pursued her administrative remedies and was issued a Notice of Right to Sue on August 30, 2010. Am. Compl. ¶ 4. Plaintiff filed her Complaint (ECF No. 1) on November 18, 2010 and an Amended Complaint (ECF No. 7) on February 28, 2011. The Amended Complaint states one Count for violations of Title VII – sexual harassment, hostile work environment, and retaliation. Plaintiff seeks damages for her loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, back pay, front pay, and interest. Am. Compl. ¶ 33.

Defendant filed its Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 8) on March 10, 2011. Plaintiff filed her Response (ECF No. 11) on April 7, 2011, and Defendant replied on April 11, 2011 (ECF No. 12).

## III. The Parties' Contentions

With respect to the hostile work environment claim, Defendant asserts that Plaintiff did not allege sufficiently severe or pervasive harassment. Defendant concedes that DeVore was Plaintiff's supervisor but contends that he was not a management-level employee and therefore Defendant cannot be held liable for his actions. Defendant argues that it took remedial action by suspending and firing Robinson. With respect to the retaliation claim, Defendant contends that requiring Plaintiff to refund her administrative leave pay was not an "adverse action," and that the timing does not suggest a causal link to Plaintiff's sexual harassment complaint.

3

Plaintiff responds that she pled sufficient facts to state a claim of pervasive, ongoing sexual harassment resulting in a hostile work environment. Plaintiff asserts that DeVore was her supervising officer and any questions of fact regarding his management-level status are not properly determined on a motion to dismiss. Plaintiff argues that Defendant failed to take any prompt and appropriate remedial measures after she complained of sexual harassment in June 2008, and that she suffered further harassment when she returned to work in August 2008. Further, Plaintiff contends that garnishing her wages was economic retaliation, and that Defendant engaged in a pattern of ongoing antagonism, including ignoring Plaintiff's complaints and improperly disseminating information about her complaints.

## IV. Legal Standard

### A. Jurisdiction

This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b).

### B. Motion to Dismiss for Failure to State a Claim

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss for failure to state a claim, the complaint must plead sufficient factual allegations, that, taken as a

4

whole, state a facially plausible claim to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint satisfies the threshold of facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), the Third Circuit described Iqbal as requiring a two-part analysis of a Rule 12(b)(6) motion. Id. at 210. The Court first separates the facts averred from any legal conclusions in the complaint. Id. at 210-11. The court accepts all factual allegations as true but may disregard any legal conclusions. Id. (citing Iqbal, 129 S. Ct. at 1949). Second, the court determines whether a reasonable reading of the complaint shows that the plaintiff has a plausible claim for relief. Id. at 211.

**V.     Discussion**

Title VII of the Civil Rights Act of 1964 protects employees against sexual harassment by their employers. 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer. . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."). Title VII also protects employees against retaliation for reporting sexual harassment in the workplace. 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees. . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."). Plaintiff has alleged claims for both "hostile environment"

5

sexual harassment and retaliation.

### A. Hostile Environment

To state a claim for "hostile environment" sexual harassment, a plaintiff must allege the following elements:

(1) the employee suffered intentional discrimination because of their sex;
(2) the discrimination was pervasive and regular;
(3) the discrimination detrimentally affected the plaintiff;
(4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and
(5) the existence of respondeat superior liability.

Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (citing Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001)).

In Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), the Supreme Court explained that a hostile work environment is actionable when the harassing conduct is both objectively hostile, as perceived by a reasonable person, and subjectively hostile, as perceived by the plaintiff herself. Id. at 21-22. Title VII protects against conduct that would "detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers," and "comes into play before the harassing conduct leads to a nervous breakdown." Id. at 22 (emphasis added). To determine whether the work environment is hostile, the factfinder considers the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. Title VII is not a "general civility code" and "does not prohibit 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of

6

the opposite sex.'" Faragaher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).

Here, Plaintiff has raised the following factual allegations: Robinson repeatedly asked her out, called her sexy, approached her while she was alone in a locker room, asked her multiple times to have sex with him, sent her inappropriate messages, and followed her car after work. Robinson's recurring behavior was far more threatening than an isolated offensive utterance or innocuous interaction. A reasonable jury could find that such conduct was objectively severe and pervasive enough to change the conditions of Plaintiff's work environment. Plaintiff has alleged that fear of ongoing harassment prevented her from performing her job by causing her to suffer a nervous breakdown that required treatment by hospitalization and medication. As the Supreme Court explained in Harris, harassment that leads to a nervous breakdown is beyond the threshold of unacceptable behavior under Title VII.

An employer may be held liable for a hostile environment created by a plaintiff's non-supervisory co-workers if the plaintiff establishes that "the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." Huston, 568 F.3d at 104 (citing Weston, 251 F.3d at 427). A remedial measure is adequate "'if it is reasonably calculated to prevent future harassment.'" Id. at 110 (quoting Knabe v. Boury Corp., 114 F.3d 407, 412 n.8 (3d Cir. 1997)) (affirming summary judgment for the defendant employer, which initiated an investigation of the plaintiff's allegations of sexual harassment on the day she complained; moved her to a different team where she never had to work with the alleged harassers; conducted interviews with witnesses; disciplined employees who violated company

7

policies; and effectively prevented any harassment after the plaintiff reported her complaint); see also Bonenberger v. Plymouth Twp., 132 F.3d 20, 27 (3d Cir. 1997) (reversing summary judgment for the defendant employer, which did not take any action to discipline the perpetrator or stop the ongoing harassment of the plaintiff, during the nearly two months after the plaintiff complained of harassment and before she resigned).

Knowledge of harassment is imputed to the employer when "management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment." Huston, 568 F.3d at 105 (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990)). In Huston, the Third Circuit delineated two categories of "management-level" employees. Id. at 107. One category, not relevant here, consists of employees "specifically employed to deal with sexual harassment" such as "a human resources manager." Id. The second type of management-level employee is someone "sufficiently senior in the employer's governing hierarchy, or otherwise in a position of administrative responsibility over employees under him," who "usually has the authority to act on behalf of the employer to stop the harassment, for example, by disciplining employees or by changing their employment status or work assignments." Id.

The Third Circuit applied this standard to the facts of Huston, where a female machine technician at a paper manufacturing plant complained to supervising technicians about sexual harassment by males on her technician team. Id. at 102-03. Although the supervising technicians "happened to perform some oversight functions" on the machines, "they remained technicians, generally practicing the same skills and often performing substantially the same functions" as the plaintiff. Id. at 108. The plaintiff's immediate supervisor was a department

manager, who "possessed the authority to make staffing decisions and other decisions relevant to the employment status of technicians." Id. at 109. Therefore, a reasonable juror could find that the supervising technicians were not management-level employees for purposes of imputing knowledge of the harassment to the employer. Id. at 109-10 (affirming the district court's judgment in favor of the employer on the plaintiff's hostile environment claim).

Here, Plaintiff alleged that she twice reported the sexual harassment to DeVore, a Sergeant who was promoted to Police Chief within two months of Plaintiff's complaints. DeVore said that he would take care of the problem. Drawing all inferences in favor of the Plaintiff at the motion to dismiss stage, the Court finds that Plaintiff alleged DeVore was "sufficiently senior" in the hierarchy to be a management-level employee for purposes of imputing knowledge of the harassment to Defendant. Plaintiff further alleged that ten days after she first complained to DeVore, she asked Lester, the Interim Chief, for an update on Defendant's investigation of her complaint, which put him on notice of her allegations of sexual harassment as well. His knowledge may also be imputed to Defendant. Plaintiff alleged that Defendant failed to investigate her complaints for more than two months after she complained, including while she was on administrative leave, although taking leave was ostensibly for the purpose of such an investigation. Plaintiff alleged that Defendant did not discipline Robinson, and the harassment continued after DeVore demanded that Plaintiff return to work on August 28, 2008. Plaintiff has pled sufficient factual allegations to state a plausible claim of "hostile environment" sexual harassment.

**B.     Retaliation**

To state a claim for retaliation under Title VII, a plaintiff must allege "that: '(1) she

9

engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). A retaliatory action is materially adverse if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). The scope of the anti-retaliation provision is broad, "extend[ing] beyond workplace-related or employment-related retaliatory acts and harm." Id. at 67.

To show causation, a plaintiff "usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). For example, in Robinson v. SEPTA, 982 F.2d 892 (3d Cir. 1993), the Third Circuit held that although two years passed between the protected conduct and the alleged retaliatory action, the intervening pattern of "harassing Robinson by repeatedly disciplining him for minor matters, miscalculating his points for absences from work, and generally trying to provoke Robinson to insubordination" supported a finding of a causal link. Id. at 895. The Third Circuit held that alleging a retaliatory action occurred "[s]everal months after [the plaintiff's] last protected activity" showed sufficient temporal proximity to support a causal link. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997) (reversing the district court's dismissal of plaintiff's retaliation claim where she alleged that a minimum of four months passed between her opposition to a discriminatory act, and the defendant employer's adverse action of telling plaintiff she was being removed from the

management track). Similarly, in Fasold v. Justice, 409 F.3d 178, 190 (3d Cir. 2005), the Third Circuit found there was temporal proximity where just under three months elapsed between the plaintiff's protected act of filing an administrative claim, and the defendant's adverse action of denying the plaintiff's grievance and upholding his termination. Id. at 190 (reversing the district court's grant of summary judgment for the defendant employer). See also Artz v. Cont'l Cas. Co., 720 F. Supp. 2d 706, 715 (E.D. Pa. 2010) (Stengel, J.) (holding that a reasonable employee would find "materially adverse" plaintiff's allegation that the employer responded to her complaint of sexual harassment by "inform[ing] her that she was free to quit her job, move her desk to another floor, or, in effect, buck up, grin, and bear it," and that the plaintiff sufficiently alleged temporal proximity and intervening antagonism where this remark was made two months after plaintiff's initial complaint).

Here, Plaintiff has alleged that she engaged in a protected activity by complaining about Robinson's conduct twice to DeVore, and later following up on her complaint with Lester. After Plaintiff had a nervous breakdown, she went on paid administrative leave in order for Defendant to investigate her complaint. Approximately two and a half months elapsed between Plaintiff's initial complaint to DeVore and DeVore's demand that Plaintiff return from administrative leave. During this time, comparable to the two-to-three month period in Artz and Fasold, Defendant never investigated her complaint or took corrective action. When Plaintiff returned to work despite Defendant's inaction on her complaint, Defendant revoked her pay from the period when she was on administrative leave. Plaintiff further alleged that Lester improperly disseminated information about her complaints of sexual harassment. These allegations support both a pattern of antagonism by Defendant, and temporal proximity between Plaintiff's complaint and the

adverse action of garnishing Plaintiff's wages, which caused economic harm. Plaintiff has stated a claim for retaliation under Title VII.

**VI.     Conclusion**

For the above reasons, the Court will deny Defendant's Motion to Dismiss the First Amended Complaint. An appropriate Order follows.


O:\CIVIL 09-10\10-6727 Petril v. Cheyney\Petril MTD mem.wpd